1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  WENDY COLLIER,                    )  Case No. 11-1760 SC
                                     )
9                                    )  ORDER GRANTING IN PART AND
             Plaintiff,              )  DENYING IN PART DEFENDANT'S
10                                   )  <u>MOTION FOR SUMMARY JUDGMENT</u>
                                     )
11      v.                           )
                                     )
12  RELIASTAR LIFE INSURANCE         )
    COMPANY,                         )
13                                   )
             Defendant.              )
14                                   )
                                     )
15  _____

16  I.    **INTRODUCTION**

17       Plaintiff Wendy Collier ("Collier") brings this action for

18  breach of contract, bad faith, and intentional infliction of

19  emotional distress against Defendant ReliaStar Life Insurance

20  Company ("ReliaStar") for failure to pay long-term disability

21  ("LTD") benefits.  Collier claims that she has been rendered

22  disabled by a combination of diseases, including Ehlers-Danlos

23  Syndrome ("EDS") and Postural Orthostatic Tachycardic Syndrome

24  ("POTS"), which cause her constant fatigue and extreme pain.

25  Collier applied for LTD benefits from her former employer, Marin

26  County, and from ReliaStar, under Marin County's group plan.  Marin

27  County denied Collier's claim based on an evidentiary hearing

28  before an Administrative Law Judge ("ALJ").  Collier represented

United States District Court
For the Northern District of California

1    herself pro se before the ALJ because she could not afford an

2    attorney.  ReliaStar denied Collier's claim under Marin County's

3    group plan based on medical evaluations performed by a number of

4    physicians.  Collier did not seek review of the ALJ decision but

5    did bring the instant action against ReliaStar.

6        Now before the Court is ReliaStar's motion for summary

7    judgment.  ECF No. 31 ("MSJ").  The motion is fully briefed.  ECF

8    Nos. 37 ("Opp'n"), 41 ("Reply").  Pursuant to Civil Local Rule 7-

9    1(b), the Court finds the motion suitable for determination without

10   oral argument.  ReliaStar argues that Collier is collaterally

11   estopped from pursuing this lawsuit because an ALJ previously

12   determined that she is not disabled.  ReliaStar also argues that

13   Collier's tort claims for bad faith and intentional infliction of

14   emotional distress fail because ReliaStar thoroughly investigated

15   her claim.  The Court finds that collateral estoppel should not

16   preclude Collier from litigating the issue of her disability in the

17   instant action because Collier lacked the financial means and

18   physical stamina to plead her case before the ALJ.  The Court also

19   finds that the undisputed facts show that Collier cannot succeed on

20   her claims for bad faith and intentional infliction of emotional

21   distress.  Accordingly, the Court GRANTS in part and DENIES in part

22   ReliaStar's motion for summary judgment.

23

24   **II.  BACKGROUND**

25       Collier worked as an "Eligibility Worker" for Marin County

26   from November 1991 until June 2006.  ECF No. 39 ("Collier Decl.") ¶

27   3.  During much of this time, Collier was the primary wage earner

28   in her family and had three children to support.  Id.  Collier

United States District Court
For the Northern District of California

claims that she was unable to continue working in 2006 due to the onset of extreme fatigue and pain. Id. ¶ 4. In October 2006, Collier's cardiologist, Dr. Karen Friday ("Friday"), diagnosed Collier with POTS.[1] Id. ¶ 7. Collier was subsequently diagnosed with EDS[2] by a geneticist, Kathleen Johnson ("Johnson"). Johnson told Collier that symptoms, including sprains, dislocations, and joint degeneration, could be treated as needed but would get worse over time. Id. ¶ 8. Collier claims that rest improves her pain but there is no treatment for her fatigue. Id.

In February 2007, Collier submitted a claim to ReliaStar for LTD benefits. AR RS000848.[3] Under Collier's ReliaStar policy, she is entitled to benefits if she is totally disabled, which is

---

[1] According to the National Institute of Health ("NIH"):

> Postural orthostatic tachycardia syndrome (POTS) is one of a group of disorders that have orthostatic intolerance (OI) as their primary symptom. OI describes a condition in which an excessively reduced volume of blood returns to the heart after an individual stands up from a lying down position. The primary symptom of OI is lightheadedness or fainting. In POTS, the lightheadedness or fainting is also accompanied by a rapid increase in heartbeat of more than 30 beats per minute, or a heart rate that exceeds 120 beats per minute, within 10 minutes of rising. The faintness or lightheadedness of POTS are relieved by lying down again.

ECF No. 33 ("Bromen Aff.") Ex. A.

[2] According to NIH:

> Ehlers-Danlos syndrome (EDS) is a group of inherited disorders that weaken connective tissues. Connective tissues are proteins that support skin, bones, blood vessels and other organs.

Bromen Aff. Ex. B.

[3] ReliaStar's Administrative Record ("AR") is attached to the Affidavit of Mary Kay Racette, ECF No. 32, and has been bates labeled as RS00xxxx. Citations to the AR in this Order follow this format.

**United States District Court**
For the Northern District of California

defined as: "the inability to perform with reasonable continuity all of the essential duties of any gainful occupation and as a result [the insured is] not working at all." AR RS000035. A "gainful occupation" is "any occupation that [the insured] could reasonably be expected to perform satisfactorily in light of [the insured's] age, education, training, experience, station in life, and physical and mental capacity." AR RS000036. After obtaining records from Friday and a number of Collier's other physicians, ReliaStar approved Collier's claim under the policy and awarded her benefits retroactively to September 12, 2006. AR RS000180.

On July 15, 2008, Collier informed ReliaStar that she had relocated to Puerto Armuelles, Panama, located approximately 330 miles west of Panama City. AR RS000178. About two weeks later, ReliaStar requested that Collier submit an updated statement from her physician concerning her condition. AR RS000179. In response, Collier submitted a statement from her primary physician, Dr. Michael Mason ("Mason"), reporting a primary diagnosis of EDS with chronic pain and an additional diagnosis of "autonomic dysfunction." AR RS001395. Mason indicated that he had not seen Collier since September 5, 2007, more than a year earlier. AR RS001395.

Due to the length of time since Mason had seen Collier, ReliaStar requested that she provide a more recent statement from her current treating physician. AR RS000176. In November 2008, ReliaStar received documentation from a Dr. Higiuio Ortega ("Ortega"), Collier's Panamanian physician, indicating that Collier had EDS, autonomic dysfunction, degenerative disease, and heart dysfunction. AR RS001397. Ortega concluded that Collier could not

work, but reported that she could lift up to fifty pounds, "balance," "stoop" and "reach"; that she had abilities to use her hands and right foot for at least some repetitive tasks; and that she had only a slight cardiac limitation.  AR RS001398.  ReliaStar subsequently requested Ortega's records, but Collier indicated that Ortega did not keep any, explaining: "It is very old school here, family doctor, small town."  AR RS000005, 171, 175.

On February 7, 2009, ReliaStar received a report of an independent medical examination performed by Dr. James Soong ("Soong") on behalf of Marin County in connection with Collier's application for disability retirement benefits.  AR RS000274.  Soong concluded that Collier could perform her prior job duties for Marin County if minor modifications were offered, that she did not qualify for a diagnosis of EDS, and that there was no evidence of any disease in her joints or abnormalities in her autonomic nervous system.  AR RS0000287-88.  ReliaStar also commissioned a Labor Market Study indicating that seven positions existed near Collier's former residence in California that paid a gainful wage and that Collier could perform given her capabilities, as documented by Soong.  AR RS000153, 166.  Collier claims she never saw the Labor Market Study and complains that it contained jobs all over the Bay Area, without respect to the commute from her former home.  Collier Decl. ¶ 15.

On April 8, 2009, ReliaStar informed Collier that, based on the information in Soong's independent medical examination, Ortega's reports, and the Labor Market Study, her benefits were being terminated since she did not meet the policy's definition of

United States District Court
For the Northern District of California

1  being "totally disabled" under the "any occupation standard."  AR
2  RS000146.

3      Collier appealed ReliaStar's decision in April 2009.  AR
4  RS000134.  Beginning in May 2009, ReliaStar made numerous
5  unsuccessful attempts to obtain additional medical records from
6  Ortega so that it could better evaluate Collier's appeal.  See AR
7  RS000130-133.  Finally, on August 6, 2009, Collier faxed to
8  ReliaStar what she claimed to be Ortega's medical records.  AR
9  RS0000086-98.  ReliaStar doubted the authenticity of the records
10 because, among other things, Collier had previously indicated that
11 such records did not exist.  AR RS000616-17.  The records indicated
12 that Ortega first saw Collier in July 2008 for a "skin lesion
13 secondary to heat and friction" and an infection.  AR RS000584.  It
14 was not until January 12, 2009 that Collier was seen for any
15 condition that might be related to EDS, when she complained of
16 lower back pain.  AR RS000586.  Ortega also saw Collier for pain or
17 joint conditions in February, March, and April 2009.  AR RS000588-
18 91.

19     Subsequently, ReliaStar attempted to arrange for an
20 independent medical examination in Miami, and was willing to pay
21 Collier's expenses to attend.  AR RS000576, 581.  When scheduling
22 and travel proved infeasible, ReliaStar commissioned an independent
23 medical review of Collier's file by Dr. Asim Khan ("Khan"), a
24 rheumatologist familiar with EDS.  AR RS000549, 573.  Khan opined
25 that Collier likely did not have EDS, but that she may have a "mild
26 form of hypermobility syndrome" related to EDS.  AR RS000553-54.
27 Khan concluded that Collier might have a "fibromyalgia-like
28 syndrome," anxiety, fatigue, and depression, and that she had been

1  subjectively diagnosed with POTS.  Id.  Khan believed that Collier

2  could "certainly" work a light or sedentary job with limited

3  restrictions.  AR RS000554-55.  ReliaStar requested any records of

4  genetic testing in Collier's file so that Khan could better

5  evaluate Collier's EDS diagnosis.  AR RS0000553, 558.  Collier

6  provided a note from Johnson diagnosing Collier with EDS, but Khan

7  continued to believe that Collier could work a light or sedentary

8  job.  AR RS000498-99.  Kahn recommended further evaluation in

9  Panama or in the United States, if Collier chose to return.  Id.

10      In December 2009, Collier's attorney, David Linden ("Linden"),

11  informed ReliaStar that Collier had returned to the United States

12  and was living in Napa.  AR RS0000558.  Subsequently, ReliaStar

13  commissioned Dr. Scott Anderson ("Anderson") to conduct an

14  independent medical examination of Collier and review her medical

15  records.  Like Soong and Kahn, Anderson rejected Collier's EDS

16  diagnosis.  AR RS000491-92.  Instead, Anderson diagnosed Collier

17  with obesity and concluded that she could work "8 hours a day, five

18  days a week or something comparable to that," so long as it

19  involved light or sedentary work.  Id.

20      Sometime after Collier returned to the United States,

21  ReliaStar hired a private investigator to conduct sub rosa

22  surveillance.  See AR RS000869.  The investigator surveilled

23  Collier's parent's home in Napa -- where Collier was believed to be

24  living -- on January 8 and January 15, 2010, but did not observe

25  Collier on either date.  AR RS000871-74.  The investigator did

26  observe a "white female," believed to be Collier's mother, talking

27  with the mailperson and running an errand on January 8.  AR

28  RS000872.  For obvious reasons, this surveillance was not

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  incorporated into ReliaStar's final decision on Collier's LTD

2  claim.

3        On February 5, 2010, ReliaStar denied Collier's appeal.  AR

4  RS000471.  The denial was based on the independent medical

5  examinations performed by Soong and Anderson, as well as Khan's

6  review of Collier's file.  AR RS000480, 82.  ReliaStar also noted

7  that Collier's own physician, Mason, had "outlined physical

8  abilities that would fall within the light category" and stated

9  that Collier was working part-time.  AR RS000480-81.  ReliaStar

10  accorded little weight to Ortega's opinion since he had not treated

11  Collier for EDS until she had determined that she needed more

12  frequent treatment for insurance purposes.  AR RS000481-82.

13  Further, ReliaStar doubted the authenticity of many of Ortega's

14  records, concluding that some were actually authored by Collier and

15  others were "recreated" by Ortega.  Id.  Collier subsequently

16  requested that ReliaStar reconsider its decision, submitting

17  additional medical records from Drs. Mason, Scott E. Pinner

18  ("Pinner"), and Kamer Tezcan ("Tezcan"), dated October 30, 2009 or

19  later.  AR RS000889-90, 929.  ReliaStar denied Collier's request

20  for a second appeal, noting that the newly submitted treatment

21  records did not address the relevant period of time.  AR RS000889-

22  90.

23        On June 15, 2010, a contested hearing was held before an ALJ

24  on behalf of the Marin County Employees' Retirement Association

25  ("MCERA") concerning Collier's application for disability

26  retirement benefits from Marin County.  Bromen Aff. Ex. H.  By the

27  hearing date, Collier had been without benefits for almost a year

28  and was living with her parents in Napa because she "could not

afford to do anything else." Collier Decl. ¶ 17.  MCERA bylaws allowed Collier to be represented by counsel at the hearing, Bromen Aff. Ex. G § 1007, but Collier "could not afford to pay for representation on an hourly basis, and for financial and other reasons, [she] was refused representation by a number of attorneys," Collier Decl. ¶ 18.[4]  Collier represented herself at the hearing, but claims that she was unable to follow all of the proceedings due to pain and fatigue.  Id. ¶¶ 18, 20.  Soong, the only physician at the hearing, testified that Collier was able to perform the duties of her previous position with Marin County. Bromen Aff. Ex. H 83-143.  Collier claims her own physician declined to testify at the hearing.  Collier Decl. ¶ 19.

The ALJ concluded that Collier did not establish that she had EDS or POTS or "that she is substantially unable to perform the usual duties" of her previous position with Marin County.  Bromen Aff. Ex. F at 4-6.  On January 12, 2011, MCERA unanimously approved the ALJ's findings and denied Collier's request for disability benefits.  Bromen Aff. Ex. J at 4.  Collier declined to appeal.

Collier filed the instant action against ReliaStar on April 11, 2011, alleging claims for bad faith, intentional infliction of emotional distress, and breach of contract.  ECF No. 1 ("Compl.").  ReliaStar now moves for summary judgment on the grounds that (1) Collier is collaterally estopped from bringing this action because the underlying issues have already been litigated before an ALJ; (2) ReliaStar did not act in bad faith because there was a genuine

---

[4] At the time, Collier was represented by Linden in connection with ReliaStar's denial of benefits, but Linden claimed that the administrative hearing was outside of his field.  Collier Decl. ¶ 18.  Linden unsuccessfully attempted to continue the hearing so that Collier could find representation.  Id.

United States District Court
For the Northern District of California

1  dispute regarding Collier's claim for benefits; and (3) ReliaStar

2  is not liable for intentional infliction of emotional distress

3  because its conduct was not extreme or outrageous.  MSJ at 12-25.

4

5  **III.  LEGAL STANDARD**

6      Entry of summary judgment is proper "if the movant shows that

7  there is no genuine dispute as to any material fact and the movant

8  is entitled to judgment as a matter of law."  Fed. R. Civ. P.

9  56(a).  Summary judgment should be granted if the evidence would

10 require a directed verdict for the moving party.  Anderson v.

11 Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  Thus, "Rule 56[]

12 mandates the entry of summary judgment . . . against a party who

13 fails to make a showing sufficient to establish the existence of an

14 element essential to that party's case, and on which that party

15 will bear the burden of proof at trial."  Celotex Corp. v. Catrett,

16 477 U.S. 317, 322 (1986).  "The evidence of the nonmovant is to be

17 believed, and all justifiable inferences are to be drawn in his

18 favor."  Anderson, 477 U.S. at 255.  However, "[t]he mere existence

19 of a scintilla of evidence in support of the plaintiff's position

20 will be insufficient; there must be evidence on which the jury

21 could reasonably find for the plaintiff."  Id. at 252.  "When

22 opposing parties tell two different stories, one of which is

23 blatantly contradicted by the record, so that no reasonable jury

24 could believe it, a court should not adopt that version of the

25 facts for purposes of ruling on a motion for summary judgment."

26 Scott v. Harris, 550 U.S. 372, 380 (2007).

27 ///

28 ///

**United States District Court**
For the Northern District of California

1  **IV.  <u>DISCUSSION</u>**

2      **A.   <u>Collateral Estoppel</u>**

3          ReliaStar argues that Collier is collaterally estopped from

4  bringing the instant action because an ALJ has already determined

5  that she is not disabled.  MSJ at 12.  Collateral estoppel, also

6  known as issue preclusion, applies where: (1) the issue to be

7  precluded is identical to that decided in a prior proceeding; (2)

8  the issue was actually litigated in the prior proceeding; (3) the

9  issue was necessarily decided; (4) the decision in the prior

10 proceeding was "final and on the merits"; and (5) the party against

11 whom preclusion is sought is identical to or in privity with the

12 party to the former proceeding.  <u>People v. Garcia</u>, 39 Cal. 4th

13 1070, 1077 (Cal. 2006).  "Collateral estoppel may be applied to

14 decisions made by administrative agencies [w]hen an administrative

15 agency is acting in a judicial capacity and resolves disputed

16 issues of fact properly before it which the parties have had an

17 adequate opportunity to litigate."  <u>People v. Sims</u>, 32 Cal. 3d 468,

18 479 (Cal. 1982) (internal quotations omitted).

19         The Court finds that Collier is not collaterally estopped from

20 bringing the instant action because she did not have an adequate

21 opportunity to litigate her claims before the ALJ.  At the

22 administrative hearing, Collier was forced to represent herself pro

23 se and she claims she was distracted by fatigue and pain throughout

24 the proceedings.  Collier Decl. ¶¶ 18-20.  Further, the only

25 physician to testify at the administrative hearing was Soong, who

26 had been hired by Marin County.  Bromen Aff Ex. F at 4.  Collier

27 claims she asked one of her physicians to testify on her behalf,

28 but he declined.  Collier Decl. ¶ 19.  Collier did not know the

United States District Court

For the Northern District of California

1   procedure to arrange for his testimony and lacked the money to pay

2   expert fees.  Id.  Accordingly, the Court declines to give the

3   ALJ's decision a preclusive effect in the instant action.  See West

4   v. Ruff, 961 F.2d 1064, 1065 (2d Cir. 1992) (plaintiff "lacked a

5   full and fair opportunity to litigate his claim" in parallel state

6   litigation because his claims "could not be adequately presented

7   pro se"); Davis v. Charleston, 827 F.2d 317 n.3 (8th Cir. 1987)

8   ("[A]s a pro se litigant before the state court, we do not believe

9   that [plaintiff] had a full and fair opportunity to litigate the

10  issue in the prior suit." (internal quotations and citations

11  omitted)).

12      ReliaStar argues that Collier's pro se status is irrelevant

13  since, under Sims, collateral estoppel is justified so long as a

14  party "had notice of the hearing as well as the opportunity and

15  incentive to present its case."  Reply at 5 (citing Sims, 32 Cal.

16  3d at 481).  Sims is inapposite.  In that case, the Supreme Court

17  gave preclusive effect to an administrative hearing before the

18  California Department of Social Services, even though Sonoma

19  County, the party against whom collateral estoppel was asserted,

20  had declined to present any evidence or otherwise participate at

21  the hearing.  Sims, 32 Cal. 3d at 481.  The court reasoned that the

22  County had an opportunity and incentive to present its case at the

23  hearing, even if it declined to so.  Id.  However, there is no

24  indication that Sonoma County, like Collier, lacked the means to

25  hire an attorney or acquire pertinent evidence.

26      ReliaStar also argues that Collier must have had a full and

27  fair hearing since she testified, cross-examined Soong, and entered

28  evidence into the record.  Reply at 5.  The Court disagrees.  The

**United States District Court**
For the Northern District of California

1  fact that Collier acted as her own attorney does not mean that she

2  performed adequately.  For example, Collier's entire opening

3  statement consisted of the following: "I guess I would, you know,

4  just like to say, you know, I am hoping that the medical evidence

5  is sufficient to support what I am saying is making me unable to

6  work.  And that's about it."  Bromen Ex. H at 5.  Even a brief

7  perusal of the rest of the hearing transcript shows that Collier

8  would have greatly benefited from competent legal representation.[5]

9      For these reasons, the Court finds that Collier is not

10  collaterally estopped from bringing the instant action.

11      **B.   <u>Collier's Bad Faith Claim</u>**

12      Collier's claim for bad faith, i.e., violation of the covenant

13  of good faith and fair dealing, is predicated on ReliaStar's

14  alleged failure to thoroughly investigate her disability claim.

15  <u>See</u> Compl. ¶¶ 6-7, Opp'n at 6-7.  The undisputed facts do not

16  support such a claim.

17      In the insurance context, the implied covenant of good faith

18  and fair dealing requires an insurer to refrain from injuring its

19  insured's right to receive the benefits of the insurance agreement.

20  <u>Egan v. Mut. of Omaha Ins. Cos.</u>, 24 Cal. 3d 809, 818 (Cal. 1979).

21  The implied covenant imposes an obligation on insurers to "give at

22  least as much consideration to the welfare of its insured as it

23  ─────────────────────

24  [5] ReliaStar also challenges the credibility of Collier's assertion
    that she could not afford an attorney.  Reply at 5 n.1.  This
25  argument lacks merit.  As an initial matter, the Court cannot make
    credibility determinations on a summary judgment motion.  Even if
26  it could, it is entirely plausible that Collier, who had been
    without disability benefits for over a year and was living with her
    parents at the time, lacked the means to pay an attorney out-of-
27  pocket.  It is also plausible that Collier was unable to find an
    attorney to represent her at an administrative hearing on a
28  contingency fee basis.

gives to its own interests" and, consequently, to "fully inquire into possible bases that might support the insured's claim." Id. at 818-19.  There is no "general rule as to how much or what type of investigation is needed to meet the insurer's obligations." Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 723 (Cal. 2007). Instead, claims of bad faith "must be evaluated in light of the totality of the circumstances." Id.  For example, in some cases, "review of the insured's submitted medical records might reveal an indisputably reasonable basis to deny the claim without further investigation."[6]  Id.

The Court finds that ReliaStar met its duty to investigate Collier's claim.  As detailed in Section II above, ReliaStar consulted a number of physicians, including Soong, Kahn, and Anderson, before reaching a final determination on Collier's claim. Additionally, ReliaStar reviewed the records of Collier's own physicians, including Mason and Ortega, and exerted significant efforts to obtain, translate, and verify the records of Ortega.  At one point, in an attempt to better assess her claim, ReliaStar offered to fly Collier from Panama to Miami so that it could commission an independent medical examination.  Additionally, ReliaStar repeatedly asked Collier to submit additional documents

---

[6] ReliaStar contends an insurer has no further duty to investigate a claim once it has determined that there is a genuine dispute over coverage.  Reply at 9.  The Ninth Circuit has held as much. Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc., 971 F.2d 272, 282-283 (9th Cir. 1992).  However, a genuine dispute only exists "where the insurer's position is maintained in good faith and on reasonable grounds."  Wilson, 42 Cal. 4th at 723. Presumably, where, as here, a factual dispute arises between the parties, some reasonable investigation is required before an insurer can maintain its position "in good faith and on reasonable grounds."  An insurer may not manufacture a "genuine dispute" over a factual issue by conducting a biased or incomplete investigation.

1   that might support her claim.  In light of the totality of the

2   circumstances, these efforts are sufficient to satisfy ReliaStar's

3   duty to investigate.

4        Collier cites fifteen purported deficiencies in ReliaStar's

5   handling of her claim.  The Court finds that these purported

6   deficiencies, either considered independently or taken together,

7   are insufficient to support a claim for bad faith.

8        First, Collier argues that ReliaStar ignored the subjective

9   evidence of her condition, such as chronic pain and fatigue.  Opp'n

10  at 8-9.  This claim is contradicted by the record.  Each of the

11  independent physicians who either examined Collier or reviewed her

12  records noted and considered her subjective complaints.  <u>See</u> AR

13  RS000275-76, 485-86, 552-54.  Collier heavily relies on the Ninth

14  Circuit's decision in <u>Salomaa v. Honda Long Term Disability Plan</u>,

15  642 F.3d 666 (9th Cir. 2011).  In that case, the plaintiff's

16  physicians diagnosed him with chronic fatigue syndrome, a condition

17  without objective symptoms, and every physician who examined the

18  plaintiff concurred that he was disabled.  <u>Salomaa</u>, 642 F.3d at

19  669, 676.  Such is not the case here.  There is a disagreement

20  among various physicians about the extent and existence of

21  Collier's disability and no doctor has diagnosed her with chronic

22  fatigue syndrome.  Further, in <u>Salomaa</u>, the Ninth Circuit

23  considered whether the plan had wrongfully denied benefits, not

24  whether that denial was made in bad faith.

25       Second, Collier complains that ReliaStar "failed to tell [her]

26  what evidence it would accept to prove that she had too much pain

27  or fatigue to work."  Opp'n at 9.  This argument is unavailing.  As

28  an initial matter, Collier cites no authority which would impose

**United States District Court**
For the Northern District of California

1   such an obligation on insurers in this context.  Further, ReliaStar
2   asked Collier to submit additional evidence which might support her
3   claim on numerous occasions.  <u>See</u>, <u>e.g.</u>, AR RS000175, 558.

4   　　Third, Collier argues that ReliaStar acted in bad faith
5   because "when it terminated Ms. Collier's benefits and told her she
6   could appeal, it failed to tell her that she was not required to go
7   through an appeal, and could instead immediately file suit."  Opp'n
8   at 9.  Once again, Collier cites no authority to support her
9   position.  Further, ReliaStar never indicated that Collier was
10  required to appeal.  <u>See</u> AR RS000148.

11  　　Fourth, Collier asserts that ReliaStar consistently failed to
12  give her the opportunity to respond to medical reports before
13  ReliaStar relied upon them to make a decision.  Opp'n at 9-10.
14  This argument has been rejected in the ERISA context since
15  requiring an insurer to obtain a response to an expert report
16  before a decision "would create an endless loop of opinions,
17  characterized by an unnecessary cycle of submission, review, re-
18  submission, and re-review."  <u>Winz-Byone v. Metro. Life Ins. Co.</u>,
19  No. EDCV 07-238-VAP (OPx), 2008 U.S. Dist. LEXIS 109824, at *21
20  (C.D. Cal. Mar. 26, 2008) (internal quotations and citations
21  omitted).

22  　　Fifth, Collier argues that, in making its initial termination
23  decision, ReliaStar improperly relied on Soong's medical report and
24  disregarded Ortega's.  Opp'n at 10.  But ReliaStar's decision to
25  accord more weight to Soong's diagnosis than to Ortega's cannot
26  support a claim for bad faith because it was not unreasonable.
27  Soong had conducted an independent medical examination of Collier,
28  reviewed her medical files, and had provided ReliaStar with

**United States District Court**
For the Northern District of California

1   supporting documentation.  On the other hand, at the time of the

2   initial termination decision, Ortega had not provided ReliaStar

3   with medical records supporting his diagnosis.  Further, as noted

4   in ReliaStar's termination letter, Ortega had "outline[d]

5   [Collier's] physical capacities in the light-medium category,"

6   indicating that she was capable of performing some work.  AR

7   RS000147.

8        Sixth, Collier argues that ReliaStar committed bad faith

9   because Soong "did not measure joint laxity -- instead he measured

10  range of motion of some of the larger joints."  Opp'n at 10.  Even

11  if Soong's examination was flawed in some way -- and based on the

12  record before the Court it is not altogether clear that it was --

13  ReliaStar cannot be held liable for bad faith for relying on it.

14  Missing from Collier's opposition is any indication that ReliaStar

15  acted unreasonably in basing its benefits decision on Soong's

16  independent medical examination.

17       Seventh, Collier faults ReliaStar for failing to consider

18  whether Soong was biased.  Opp'n at 11.  Soong has testified that

19  90 percent of his medical legal work has been for defendants and

20  that his opinions are generally based on "objective diseases and

21  findings" rather than subjective symptoms.  Id.  But the fact Soong

22  frequently testifies on behalf of defendants does not mean that it

23  was unreasonable for ReliaStar to rely on his opinion.  Further, as

24  noted above, Soong did assess Collier's subjective symptoms in

25  rendering his diagnosis.

26       Eighth, Collier argues that ReliaStar did not timely inform

27  her that it was reexamining her claim because her policy's

28  definition of disability had changed.  Opp'n at 11.  This claim is

**United States District Court**
For the Northern District of California

1    contradicted by the record.  In April 2007, ReliaStar informed

2    Collier that her initial claim for disability benefits had been

3    approved, that the policy's definition of disability would change

4    in September 2008, and that ReliaStar would be reviewing her claim

5    periodically.  AR RS000180-81.

6         Ninth, Collier contends that "ReliaStar does not believe it

7    has an obligation to investigate."  Opp'n at 11-12.  Collier relies

8    on this excerpt from the deposition testimony of ReliaStar claim

9    analyst Steve Cayford ("Cayford"): "It's not a duty to seek out

10   information.  There is a proof of loss provision in the policy that

11   would require that the claimant provide this information."  Id.

12   This argument is unconvincing.  Cayford's statement is taken

13   completely out of context.  See ECF No. 40 ("Padway Decl.") Ex. 2

14   ("Cayford Dep.") at 6-7.  Additionally, regardless of Cayford's

15   interpretation of ReliaStar's legal duties, the undisputed facts

16   show that ReliaStar adequately investigated Collier's claim.

17        Tenth, Collier takes issue with Kahn's medical evaluation,

18   speculating that he might have reached a different conclusion had

19   ReliaStar gathered a better history from Collier.  Opp'n at 12.

20   Such speculation cannot support a claim for bad faith.  As

21   ReliaStar argues, the issue is not what Khan might have concluded

22   had the facts been different, but what he did conclude.

23   Ultimately, there was nothing unreasonable about ReliaStar's

24   reliance on Khan's opinion.

25        Eleventh, Collier questions the impartiality of Anderson and

26   MES Medical Solutions, the company that contracted Anderson for

27   Collier's independent medical examination.  Id. at 12-13.  These

28

United States District Court
For the Northern District of California

charges of bad faith are substantially similar to those made concerning Soong and Kahn, and they fail for the same reasons.

Collier's twelfth argument is predicated on an apparent misunderstanding of ReliaStar's attempted surveillance of Collier. See id. at 13. The surveillance was not incorporated into ReliaStar's benefits decision because Collier was never actually observed by ReliaStar's private investigator. AR RS000869-872. Collier appears to argue that the surveillance should have been incorporated into ReliaStar's decision because it somehow supported her disability claim. Opp'n at 13. Specifically, Collier argues that the January 8, 2010 surveillance only showed that she "ran an errand and talked to her mailman. The surveillance results are consistent with the reported pain and fatigue." Id. at 13. This argument borders on the frivolous. As the surveillance report indicates, it was Collier's mother, not Collier, that was observed talking to the mailman and running an errand. AR RS000872-74.

Thirteenth, Collier contends that ReliaStar failed to properly evaluate Collier's claim that she had too much fatigue and pain to work when it denied her appeal in February 2010. Opp'n. at 13. This appears to be nothing more than a repetition of a number of arguments already addressed and rejected above.

Fourteenth, Collier contends that ReliaStar somehow committed bad faith when it questioned the authenticity of Ortega's records. Opp'n at 14. The Court disagrees. In light of the circumstances, it was not unreasonable for ReliaStar to doubt Ortega's records. For example, Collier, not Ortega, initially sent ReliaStar the records, and Collier had initially represented that such records did not exist. Further, the records that were obtained directly

**United States District Court**
For the Northern District of California

1   from Ortega indicate that Collier was not treated for joint pain

2   and chronic fatigue until after ReliaStar began to question her

3   diagnosis.

4      Finally, Collier accuses ReliaStar of picking and choosing

5   which evidence it would gather and consider.  Opp'n at 14-15.

6   Collier specifically targets ReliaStar's decision to disregard her

7   treatment records from October 30, 2009 and beyond since

8   ReliaStar's decision was based on Collier's condition as of April

9   9, 2009.  Id.  Collier points out that ReliaStar conducted

10  surveillance in January and April 2010 and ordered Anderson to

11  conduct an examination in January 2010.  Id.  This argument is

12  unavailing.  Presumably, ReliaStar waited to commission an

13  independent medical examination and surveillance until 2010 because

14  it believed that Collier was living in Panama through 2009.

15     Accordingly, the Court GRANTS ReliaStar's motion for summary

16  judgment with respect to Collier's claim for bad faith.[7]

17  **C.   Intentional Infliction for Emotional Distress**

18     To prevail on her claim for intentional infliction of emotion

19  distress, Collier must show "extreme" and "outrageous" conduct on

20  the part of ReliaStar.  See Cervantez v. J. C. Penney Co., 24 Cal.

21  3d 579, 593 (Cal. 1979).  "This standard is at least as difficult

22

23  [7] With the Court's approval, ECF No. 46 ("Mar. 5, 2012 Order"),
    Collier filed a Surreply, alleging a number of additional
    deficiencies in the medical evaluations of Khan, Soong, and
24  Anderson, ECF No. 48 ("Surreply").  Collier's Surreply suffers from
    the same defects as her opposition: it does not show why it was
25  unreasonable for ReliaStar to rely on the independent evaluations
    of these medical professionals and, therefore, why ReliaStar should
26  be held liable for bad faith.  Further, with respect to Collier's
    bad faith claim, ReliaStar's actions must be measured on the facts
27  it possessed at the time it rendered its benefits decision.  The
    new information on which Collier relies, deposition testimony of
28  Khan and Anderson, was not available to ReliaStar at the time it
    terminated Collier's benefits.

to meet as that for insurance bad faith, if not more so." <u>Ayers v.</u>
<u>Std. Ins. Co.</u>, 51 Fed. Appx. 222, 224 (9th Cir. 2002).  As the
undisputed facts show that Collier cannot state a claim for bad
faith, her claim for intentional infliction of emotional distress
must also fail.

**V.   CONCLUSION**

    For the foregoing reasons, the Court GRANTS in part and DENIES
in part Defendant ReliaStar Life Insurance Company's motion for
summary judgment.  Plaintiff Wendy Collier's claims for bad faith
and intentional infliction of emotional distress are DISMISSED.
Collier's claim for breach of contract may proceed to trial.


    IT IS SO ORDERED.


Dated:  March 13, 2012          _____
                                UNITED STATES DISTRICT JUDGE