United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY COLLIER, | ) Case No. 11-1760 SC |
| | ) |
| | ) ORDER DENYING DEFENDANT'S |
| Plaintiff, | ) RENEWED MOTION FOR JUDGMENT AS |
| | ) A MATTER OF LAW AND |
| v. | ) PLAINTIFF'S MOTION TO AMEND |
| | ) <u>THE JUDGMENT</u> |
| RELIASTAR LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## I. <u>INTRODUCTION</u>

Plaintiff Wendy Collier ("Collier" or "Plaintiff") filed this action against Defendant ReliaStar Life Insurance Company ("ReliaStar" or "Defendant") for failure to pay long-term disability benefits, asserting claims for breach of contract, bad faith, and intentional infliction of emotional distress ("IIED"). ECF No. 1 ("Compl."). On February 3, 2012, ReliaStar moved for summary judgment, arguing that Collier's entire action was barred by collateral estoppel due to a prior decision by the Marin County Employee's Retirement Association ("MCERA") and that the undisputed facts showed that Collier could not prevail on her claims for bad faith and IIED. ECF No. 31 ("Def.'s MSJ"). The motion was granted

in part and denied in part. ECF No. 54 ("SJ Order").[1] The Court dismissed Collier's bad faith and IIED claims, but rejected ReliaStar's collateral estoppel arguments and allowed Collier's breach of contract claim to proceed to trial. Id. On April 12, 2012, the jury returned a verdict in favor of Collier. ECF No. 105 ("Verdict"). Soon thereafter, the Court entered a judgment of $106,947.68 in favor of Collier. ECF No. 109.

Neither party is satisfied with this outcome. ReliaStar has filed a renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, asking the Court to reconsider its collateral estoppel determination based on the record developed since the Court's Summary Judgment Order. ECF No. 112 ("Def.'s Mot."). Collier moves to alter the judgment pursuant to Rule 59. ECF No. 124 ("Pl.'s Mot."). Collier requests that the Court revisit its decision to dismiss her claims for bad faith and IIED and allow those claims to be adjudicated by a jury. Id. Both motions are fully briefed. ECF Nos. 128 ("Opp'n to Def.'s Mot."), 133 ("Opp'n to Pl.'s Mot."), 134 ("Reply ISO Def.'s Mot."), 140 ("Reply ISO Pl.'s Mot."). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for determination without oral argument. As detailed below, the Court finds that it reached the correct outcome in its Summary Judgment Order and DENIES both ReliaStar and Collier's motions.

**II.  BACKGROUND**

Collier began working for Marin County in 1991 as an Eligibility Worker II, administering social welfare programs.

---
[1] Collier v. ReliaStar Life Ins. Co., 11-1760 SC, 2012 WL 850742, 2012 U.S. Dist. LEXIS 33577 (N.D. Cal. Mar. 13, 2012)

2

RS000418.[2] As a benefit of her employment, Collier was insured by a group disability income insurance policy issued by ReliaStar. RS000018. Under the ReliaStar policy, Collier is entitled to disability benefits if she is "totally disabled," which is defined as:

> [S]ickness or accidental injury which has caused the following:
> - During the benefit waiting period and the first 24 months of disability benefits, the inability to perform with reasonable continuity all of the essential duties of your regular occupation and as a result you are not working at all.
> - After you have qualified for monthly income benefits for 24 months, the inability to perform with reasonable continuity all of the essential duties of any gainful occupation and as a result you are not working at all.

RS000035. Thus, in order to qualify for disability benefits for the first twenty-four months of disability, Collier must be unable to perform her "own occupation." After the first twenty-four months, the standard changes from "own occupation" to "any occupation," whereby Collier may only continue receiving benefits if she is unable to perform any "gainful occupation." The policy defines "gainful occupation" as "any occupation that [the insured] could reasonably be expected to perform satisfactorily in light of [the insured's] age, education, training, experience, station in life, and physical and mental capacity." RS000036.

Collier ended her active employment with Marin County on June 14, 2006 due to disability. RS0000418. Collier had sustained an ankle injury in 2001 and, in the intervening years, had developed a

---

[2] The administrative record for this matter is attached to the Affidavit of Mary Kay Racette ("Racette"), ECF No. 32, and has been bates-labeled as RS000xxxx. Citations to the record follow this format.

3

number of other symptoms, including chronic pain, joint pain, fatigue, and dizziness. See ECF No. 39 ("Collier Decl.") ¶ 4. Collier's doctors ultimately diagnosed her with Ehlers-Danlos syndrome ("EDS")[3] Type III, autonomic dysfunction, and Postural Orthostatic Tachycardia Syndrome ("POTS").[4] Id. ¶¶ 7-8. Collier sought treatment through her medical insurance and on her own, but her medical problems persisted. Id. Collier claims that while rest improves her pain, there is no treatment for her fatigue. Id. ¶ 8. Collier claims that the pain and fatigue significantly affected her ability to perform her regular duties with Marin County. Id. ¶ 5.

In February 2007, Collier submitted a claim to ReliaStar for disability benefits that was subsequently approved, effective September 12, 2006. RS000850, RS000181. ReliaStar began to re-

---

[3] According to National Institute of Health ("NIH"):

> Ehlers-Danlos syndrome (EDS) is a group of inherited disorders that weaken connective tissues. Connective tissues are proteins that support skin, bones, blood vessels and other organs.

ECF No. 33 ("Bromen Aff.") Ex. B.

[4] According to the NIH:

> Postural orthostatic tachycardia syndrome (POTS) is one of a group of disorders that have orthostatic intolerance (OI) as their primary symptom. OI describes a condition in which an excessively reduced volume of blood returns to the heart after an individual stands up from a lying down position. The primary symptom of OI is lightheadedness or fainting. In POTS, the lightheadedness or fainting is also accompanied by a rapid increase in heartbeat of more than 30 beats per minute, or a heart rate that exceeds 120 beats per minute, within 10 minutes of rising. The faintness or lightheadedness of POTS are relieved by lying down again.

Bromen Aff. Ex. A.

4

evaluate Collier's claim in 2008, when the standard for receiving benefits under the policy changed from "own occupation" to "any occupation." See AR RS000179. On April 8, 2009, ReliaStar informed Collier that she did not meet the policy's definition of being "totally disabled" as of September 13, 2008, under the "any occupation" standard, and that her benefits were being terminated. RS0000146. Collier filed an administrative appeal on April 17, 2009, but ReliaStar upheld the denial decision on February 5, 2010. RS000134, RS000471.

On June 15, 2010, a hearing concerning Collier's application for disability retirement benefits from Marin County was held before an Administrative Law Judge ("ALJ") at the State of California's Office of Administrative Hearings on behalf of MCERA. Bromen Aff. Ex. F ("ALJ Decision"). By the hearing date, Collier had been without benefits for almost a year. MCERA bylaws allowed Collier to be represented by counsel at the hearing, Bromen Aff. Ex. G § 1007, but Collier claims she "could not afford to pay for representation on an hourly basis, and for financial and other reasons, [she] was refused representation by a number of attorneys," Collier Decl. ¶ 18.[5] Collier represented herself at the hearing, but claims that she was unable to follow all of the proceedings due to pain and fatigue. Id. ¶¶ 18, 20. Dr. James Soong ("Dr. Soong"), the County's expert and the only physician at the hearing, testified that Collier was able to perform the duties

---

[5] At the time, Collier was represented by David Linden ("Linden") in connection with ReliaStar's denial of benefits, but Linden claimed that the administrative hearing was outside of his field. Collier Decl. ¶ 18. Linden unsuccessfully attempted to continue the hearing so that Collier could find representation. Id.

5

of her previous position with Marin County. Bromen Aff. Ex. H at 83-143.

The ALJ was tasked with determining whether Collier was "permanently incapacitated" from performing the duties of an Eligibility Worker II.[6] Cal. Gov't Code § 31724. He concluded that she was not. ALJ Decision at 6. The ALJ's findings were clearly influenced by the fact that the County's expert, Dr. Soong, was the only physician to testify at the hearing. Specifically, the ALJ concluded:

> [Collier]'s medical records are voluminous. She relies on various documents from [her treating physicians] to assert that she has [EDS] and POTS and that she is incapacitated from her job duties. While [Collier's] medical records are extensive, and although [she] saw many physicians, . . . [t]here was no opportunity to examine or cross-examine her physicians. Notably, her physicians did not appear to be familiar with the duties of an Eligibility Worker II. Id. at 5.
>
> Dr. Soong [the County's expert] was the only physician to testify at hearing [sic]. He was subject to direct and cross-examination. He was unequivocal in his conclusion that [Collier] did not have [EDS] and that she was not incapacitated from performance of the duties of the Eligibility Worker II position.

Id. at 5-6. On January 12, 2011, MCERA's Board of Retirement unanimously approved the ALJ's findings and denied Collier's request for disability retirement benefits. Bromen Aff. Ex. J. Collier did not seek judicial review of the decision in California state court.

Collier filed the instant action against ReliaStar on April 11, 2011, asserting claims for breach of contract, bad faith, and

---

[6] Under section 31724 of the California Government Code, "[i]f the proof received, including any medical examination, shows to the satisfaction of the board that the member is permanently incapacitated physically or mentally for the performance of his duties in the service, it shall retire him . . . ."

6

IIED. ReliaStar moved for summary judgment on February 3, 2012, and the motion was granted in part and denied in part on March 13, 2012. The Court rejected ReliaStar's argument that Collier was collaterally estopped from bringing the instant action due to the outcome of the MCERA hearing. SJ Order at 2. The Court reasoned that Collier did not have an adequate opportunity to litigate her claims before MCERA because she represented herself pro se and because she claimed she was distracted by fatigue and pain throughout the proceedings. Id. at 11. The court dismissed Collier's bad faith claim, finding that the undisputed evidence showed that ReliaStar met its duty to investigate Collier's claim. Id. at 14. The Court reasoned that ReliaStar consulted a number of physicians, reviewed the records of Collier's own physicians, and repeatedly asked Collier to submit additional documents that might support her claim. Id. at 14-15. The Court also dismissed Collier's claims for IIED, reasoning that the standard for IIED "is at least as difficult to meet as that for insurance bad faith, if not more so." Id. at 20-21 (quoting Ayers v. Std. Ins. Co., 51 Fed. Appx. 222, 224 (9th Cir. 2002)).

On April 9, 2012, the case proceeded to trial. This time, Collier was represented by counsel. The jury heard testimony from not only Dr. Soong but also Collier's treating physicians, Dr. Karen Friday ("Dr. Friday"), Dr. Kamer Tezcan ("Dr. Tezcan"), Dr. Kathreen Johnston ("Dr. Johnston"), Dr. Edward Pinner ("Dr. Pinner"), and Dr. Michael Mason ("Dr. Mason"). ECF Nos. 101-104. ReliaStar's expert, Dr. Asim Khan ("Dr. Khan"), also testified. ECF No. 104. Before the close of evidence, ReliaStar moved for judgment as a matter of law on the basis of collateral estoppel for

1 the reasons stated in its summary judgment motion as supplemented
2 by the testimony at trial.  ECF No. 106 at 4.  The motion was
3 denied.  Id.  On the afternoon of April 12, 2012, the case was
4 given to the jury, which was asked to determine whether Collier was
5 "totally disabled" as of April 9, 2009.[7]  ECF No. 107 ("Jury
6 Instructions") at 3.  The jury returned a verdict in favor of
7 Collier later that day.

**III. DISCUSSION**

    **A.  ReliaStar's Motion for Judgment as a Matter of Law**

ReliaStar now renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.  Rule 50 requires a court to render a judgment as a matter of law where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1).  "The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 135 (2000).  "Thus, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility

---

[7] The jury was further instructed that, under the terms of Collier's ReliaStar insurance policy, Collier was totally disabled "if she had a disability that rendered her unable to perform with reasonable continuity the substantial and material acts necessary to pursue her usual occupation in the usual or customary way or to engage with reasonable continuity in another occupation in which she could reasonably be expected to perform satisfactorily in light of her age, education, training, experience, station in life, and physical and mental capacity."  Jury Instructions at 3.

United States District Court
For the Northern District of California

determinations or weighing any evidence." Id. (internal citations omitted).

ReliaStar argues that it is entitled to judgment as a matter of law because Collier was collaterally estopped from bringing the instant action due to MCERA's prior determination on Collier's claim for disability retirement benefits. Def.'s Mot. at 6. Collateral estoppel, also known as issue preclusion, applies where: (1) the issue to be precluded is identical to that decided in a prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided; (4) the decision in the prior proceeding was "final and on the merits"; and (5) the party against whom preclusion is sought is identical to or in privity with the party to the former proceeding. People v. Garcia, 39 Cal. 4th 1070, 1077 (Cal. 2006). "Collateral estoppel may be applied to decisions made by administrative agencies when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." People v. Sims, 32 Cal. 3d 468, 479 (Cal. 1982) (internal quotations omitted).

In its Summary Judgment Order, the Court found that collateral estoppel did not bar Collier's claims because she did not have an adequate opportunity to litigate her claims before MCERA. SJ Order at 11. In making this determination, the Court relied on the facts set forth in Collier's declaration. Id. at 11-12. Collier declared that she was forced to represent herself pro se because, "for financial and other reasons, [she] was refused representation by a number of attorneys." Collier Decl. ¶ 18. Collier also declared that she was unable to follow the administrative

1  proceedings due to pain and fatigue, that one of her physicians
2  declined to testify at the hearing, and that she did not know the
3  procedure to arrange for his testimony. Id. ¶¶ 18-20. ReliaStar
4  disputed some of these facts, but, because this issue came on a
5  motion for a summary judgment, the Court viewed the facts in the
6  light most favorable to Collier, the non-moving party. See SJ
7  Order at 13 n.5.

8  ReliaStar now argues that Collier had a full and fair
9  opportunity to litigate before MCERA because: (1) Collier could
10 have sought judicial review of the ALJ's decision with the help of
11 counsel, (2) case law shows that pro se status alone does not
12 shield a party from collateral estoppel, (3) Collier was competent
13 to represent herself at the MCERA hearing despite her alleged pain
14 and fatigue, (4) Collier received some assistance from counsel in
15 preparing for the MCERA hearing, and (5) Dr. Mason, Collier's
16 primary care physician, testified at trial that he would have
17 testified before MCERA had Collier asked. Def.'s Mot. at 8-11.

18 The Court is not persuaded. As an initial matter, ReliaStar's
19 first four arguments should have been raised in its summary
20 judgment briefing. These new arguments do not depend on any new
21 evidence raised at trial. Rather, they merely offer new legal
22 theories and new authority which were not raised before. Compare
23 Def.'s Mot. 8-11 with ECF No. 41 ("Def.'s MSJ Reply") at 5-6, ECF
24 No. 51 ("Def.'s Response to MSJ Surreply"). ReliaStar previously
25 had a full and fair opportunity to present its arguments on this
26 issue. The Court declines to give it a second bite at the apple
27 post-judgment.[8] Only ReliaStar's fifth argument -- that Dr. Mason

---

[8] Further, these four arguments would not alter the Court's analysis. As to ReliaStar's first argument, an appeal of MCERA's

10

indicated that he would have testified at the MCERA hearing had he been asked -- is predicated on new information that came to light at trial. This argument is unavailing. The fact that Dr. Mason, a physician at Kaiser Permanente ("Kaiser"), was willing to testify does not mean that Collier could have secured his appearance at the hearing. Collier would have had to negotiate with a separate medical-legal unit at Kaiser to arrange for Dr. Mason's appearance. ECF No. 129 ("Phillips Decl.") ¶ 3; ECF No. 130 ("Padway Decl.") ¶ 8. This unit frequently requires the personal service of subpoenas and the pre-payment of physician fees. Phillips Decl. ¶ 3. It is unclear that Collier could have negotiated the Kaiser system on her own. Further, ReliaStar's focus on Dr. Mason distorts the scope of this case. At trial, Collier's counsel presented the testimony of five physicians -- four from Kaiser and one from Stanford University. ECF Nos. 101-104.

---

decision through a writ of mandate to a California state court would likely have been futile. The state court would not have reviewed Collier's case de novo. See Cal. Civ. Proc. Code § 1094.5. Accordingly, Collier would not have had an opportunity to introduce testimony from her treating physicians on appeal. With respect to ReliaStar's second argument, the MCERA proceedings were not unfair merely because Collier represented herself pro se. As explained in the Court's Summary Judgment Order, Collier was incapable of adequately representing herself because of her chronic pain and fatigue. See SJ Order at 11. In its third argument, ReliaStar contends that Collier could not have been suffering from disabling pain and fatigue through the MCERA hearing because MCERA found her disability claim was meritless. Def.'s Mot. at 12. This argument is circular. If Collier's condition rendered her unable to present a competent case at the hearing, then the MCERA's determination as to Collier's condition is far from reliable. ReliaStar's fourth argument is predicated on the fact that Linden assisted Collier in attempting to obtain a continuance of the administrative hearing and entered an appearance after the hearing was concluded. Id. at 8. However, ReliaStar does not dispute that Collier was unrepresented during the substantive portion of the hearing.

1    Even if Collier did have a full and fair opportunity to
2 litigate her case before MCERA, she is not collaterally estopped
3 from bringing the instant action because the MCERA hearing involved
4 different issues.  First, Collier's burden of proof was different
5 at the MCERA hearing.  At trial, Collier needed to prove her claim
6 by the preponderance of the evidence.  Jury Instructions at 6.  In
7 contrast, at the MCERA hearing, Collier needed to submit proof to
8 "the satisfaction of the [MCERA] board."  Cal. Gov't Code § 31724.
9 Thus, the board had the discretion to reject Collier's claim, even
10 if she proved her case by the preponderance of the evidence.
11   Further, at the MCERA hearing, Collier needed to show that she
12 was "permanently incapacitated."  Cal. Gov't Code § 31724.  At
13 trial, the jury was not concerned with the duration of Collier's
14 disability.  They only needed to decide whether she was "totally
15 disabled" under the terms of the ReliaStar policy on April 9, 2009.
16 ReliaStar argues that MCERA's decision did not turn on a finding of
17 permanence.  Def.'s Reply at 7.  Specifically, Reliastar argues
18 that MCERA "concluded that Collier was in fact able to perform the
19 duties of her county position . . . ."  Id.  The Court disagrees.
20 The ALJ at the MCERA hearing merely found that Collier did not meet
21 her burden.  He gave little weight to the documents authored by
22 Collier's physicians since there was no opportunity to examine or
23 cross-examine those physicians and because they "did not appear to
24 be familiar with the duties of an Eligibility Worker II."  ALJ
25 Decision at 5.  On the other hand, the ALJ found the testimony of
26 Dr. Soong, Marin County's expert, to be "credible and persuasive."
27 Id.  Based on this evidence, the ALJ reached the legal conclusion
28 that: "[Collier] did not establish that she is substantially unable

12

to perform the usual duties of the Eligibility Worker II position." ALJ Decision at 6. The MCERA Board merely adopted the ALJ's Decision and made no factual findings of its own. See Bromen Aff. Ex. J.

For these reasons, the Court finds that Collier is not collaterally estopped from bringing the instant action and therefore DENIES ReliaStar's renewed motion for judgment as a matter of law.

### B. Collier's Motion to Amend the Judgment

Pursuant to Federal Rule of Civil Procedure 59, Collier moves for an order vacating the portion of the Court's Summary Judgment Order which dismissed her claims for bad faith and IIED. Rule 59(e), which permits a court to alter or amend a previous order, "offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotations omitted). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). Evidence is not newly discovered within the meaning of Rule 59 if it was in the moving party's possession at the time of the prior hearing date or could have been discovered with reasonable diligence. Engelhard Indus., Inc. v. Research Instrumental Corp., 324 F.2d 347, 352 (9th Cir. 1963).

13

In opposition to ReliaStar's prior motion for summary judgment, Collier asserted at least fifteen arguments as to why her bad faith claim should not be dismissed. See ECF No. 37 ("Pl.'s MSJ Opp'n") at 8-16. The Court addressed and rejected each of these arguments. See SJ Order at 15-20. Collier's motion to alter the judgment raises many of these same arguments, as well as arguments that could have been made before. Collier does not suggest that there has been an intervening change in controlling law. Further, the newly discovered evidence cited in Collier's motion does not indicate that the Court reached the wrong conclusion in dismissing Collier's bad faith and IIED claims in its Summary Judgment Order. As such, the extraordinary remedy of amending the judgment is inappropriate here.

Collier first argues that ReliaStar ignored its continuing duty to evaluate her claim, a duty which Collier claims extended beyond ReliaStar's decision to terminate her benefits through the trial on her breach of contract claim. Id. at 4. Collier suggests that ReliaStar breached this duty because, at trial, no one ever testified that ReliaStar ever looked at any "new information" to decide whether to reevaluate ReliaStar's position on the case. Id. at 4-5. This argument lacks merit. Even if Collier's interpretation of an insurer's continuing duty to investigate is correct, ReliaStar was not required to present any evidence concerning its evaluation of Collier's claim at trial. By that time, Collier's bad faith claim had already been dismissed. ReliaStar cannot be faulted for failing to present evidence on an issue which was irrelevant to its case.

Next, Collier challenges the manner in which ReliaStar decided to terminate her claim in April 2009. Pl.'s Mot. at 5-10. Missing from this discussion is any reference to new evidence that could not have been discovered through reasonable diligence prior to summary judgment. Collier's arguments are predicated on notes from the claims administrator who approved Collier's claim in 2007, ReliaStar's April 2009 letter to Collier informing her that her benefits were being terminated, and ReliaStar's purported failure to produce Karla Wagner ("Wagner"), the author of that termination letter. This is not new evidence. Further, the Court previously addressed Collier's arguments regarding Wagner when it ruled on her motions in limine. See ECF Nos. 83, 99.

Collier also takes issue with ReliaStar's decision to dismiss the medical opinions of Dr. Higiuio Ortega, one of Collier's treating physicians. Pl.'s Mot. at 11-13. Once again, this argument does not rest on any new evidence. These facts and arguments were addressed in the Court's prior Summary Judgment Order, see SJ Order at 4-6, 16-17, 19-20, and the Court will not revisit them here. Likewise, the Court declines to revisit the issue of how ReliaStar weighed the statements of its experts, Drs. Soong, Kahn, and Anderson, against the statements of Collier's treating physicians, Drs. Mason, Pinner, and Johnson. Compare Pl.'s Mot. at 13-17 with Pl.'s MSJ Opp'n at 10-13; see SJ Order at 14-15, 17-18.

Accordingly, the Court DENIES Collier's motion to amend the judgment.

///
///

**IV. CONCLUSION**

For the reasons set forth above, the Court DENIES Defendant ReliaStar Life Insurance Company's renewed motion for judgment as a matter of law and Plaintiff Wendy Collier's motion to amend the judgment. The Court's Summary Judgment Order and the jury's Verdict shall remain undisturbed.

IT IS SO ORDERED.

Dated: July 24, 2012        

UNITED STATES DISTRICT JUDGE