1

2

3

4

5                  IN THE UNITED STATES DISTRICT COURT

6             FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  WENDY COLLIER,                    ) Case No. 11-1760 SC
                                     )
9                                    ) ORDER DENYING DEFENDANT'S
              Plaintiff,             ) RENEWED MOTION FOR JUDGMENT AS
10                                   ) A MATTER OF LAW AND
                                     ) PLAINTIFF'S MOTION TO AMEND
11       v.                          ) THE JUDGMENT
                                     )
12 RELIASTAR LIFE INSURANCE          )
   COMPANY,                          )
13                                   )
              Defendant.             )
14                                   )
                                     )
15 _____)

16  **I.    INTRODUCTION**

17       Plaintiff Wendy Collier ("Collier" or "Plaintiff") filed this

18 action against Defendant ReliaStar Life Insurance Company

19 ("ReliaStar" or "Defendant") for failure to pay long-term

20 disability benefits, asserting claims for breach of contract, bad

21 faith, and intentional infliction of emotional distress ("IIED").

22 ECF No. 1 ("Compl.").  On February 3, 2012, ReliaStar moved for

23 summary judgment, arguing that Collier's entire action was barred

24 by collateral estoppel due to a prior decision by the Marin County

25 Employee's Retirement Association ("MCERA") and that the undisputed

26 facts showed that Collier could not prevail on her claims for bad

27 faith and IIED.  ECF No. 31 ("Def.'s MSJ").  The motion was granted

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  in part and denied in part.  ECF No. 54 ("SJ Order").[1]  The Court

2  dismissed Collier's bad faith and IIED claims, but rejected

3  ReliaStar's collateral estoppel arguments and allowed Collier's

4  breach of contract claim to proceed to trial.  Id.  On April 12,

5  2012, the jury returned a verdict in favor of Collier.  ECF No. 105

6  ("Verdict").  Soon thereafter, the Court entered a judgment of

7  $106,947.68 in favor of Collier.  ECF No. 109.

8     Neither party is satisfied with this outcome.  ReliaStar has

9  filed a renewed motion for judgment as a matter of law pursuant to

10  Federal Rule of Civil Procedure 50, asking the Court to reconsider

11  its collateral estoppel determination based on the record developed

12  since the Court's Summary Judgment Order.  ECF No. 112 ("Def.'s

13  Mot.").  Collier moves to alter the judgment pursuant to Rule 59.

14  ECF No. 124 ("Pl.'s Mot.").  Collier requests that the Court

15  revisit its decision to dismiss her claims for bad faith and IIED

16  and allow those claims to be adjudicated by a jury.  Id.  Both

17  motions are fully briefed.  ECF Nos. 128 ("Opp'n to Def.'s Mot."),

18  133 ("Opp'n to Pl.'s Mot."), 134 ("Reply ISO Def.'s Mot."), 140

19  ("Reply ISO Pl.'s Mot.").  Pursuant to Civil Local Rule 7-1(b), the

20  Court finds this matter appropriate for determination without oral

21  argument.  As detailed below, the Court finds that it reached the

22  correct outcome in its Summary Judgment Order and DENIES both

23  ReliaStar and Collier's motions.

25  **II.   BACKGROUND**

26     Collier began working for Marin County in 1991 as an

27  Eligibility Worker II, administering social welfare programs.

28  [1] Collier v. ReliaStar Life Ins. Co., 11-1760 SC, 2012 WL 850742, 2012 U.S. Dist. LEXIS 33577 (N.D. Cal. Mar. 13, 2012)

**United States District Court**
For the Northern District of California

1   RS000418.[2]   As a benefit of her employment, Collier was insured by

2   a group disability income insurance policy issued by ReliaStar.

3   RS000018.   Under the ReliaStar policy, Collier is entitled to

4   disability benefits if she is "totally disabled," which is defined

5   as:

6

7       [S]ickness or accidental injury which has caused the
    following:

8       • During the benefit waiting period and the first 24 months
    of disability benefits, the inability to perform with

9         reasonable continuity all of the essential duties of your
    regular occupation and as a result you are not working at

10        all.

11      • After you have qualified for monthly income benefits for 24
    months, the inability to perform with reasonable continuity

12        all of the essential duties of any gainful occupation and
    as a result you are not working at all.

13

14  RS000035.   Thus, in order to qualify for disability benefits for

15  the first twenty-four months of disability, Collier must be unable

16  to perform her "own occupation."   After the first twenty-four

17  months, the standard changes from "own occupation" to "any

18  occupation," whereby Collier may only continue receiving benefits

19  if she is unable to perform any "gainful occupation."   The policy

20  defines "gainful occupation" as "any occupation that [the insured]

21  could reasonably be expected to perform satisfactorily in light of

22  [the insured's] age, education, training, experience, station in

23  life, and physical and mental capacity."   RS000036.

24      Collier ended her active employment with Marin County on June

25  14, 2006 due to disability.   RS0000418.   Collier had sustained an

26  ankle injury in 2001 and, in the intervening years, had developed a

27  [2] The administrative record for this matter is attached to the
    Affidavit of Mary Kay Racette ("Racette"), ECF No. 32, and has been

28  bates-labeled as RS000xxxx.   Citations to the record follow this
    format.

**United States District Court**
For the Northern District of California

1  number of other symptoms, including chronic pain, joint pain,

2  fatigue, and dizziness.  See ECF No. 39 ("Collier Decl.") ¶ 4.

3  Collier's doctors ultimately diagnosed her with Ehlers-Danlos

4  syndrome ("EDS")[3] Type III, autonomic dysfunction, and Postural

5  Orthostatic Tachycardia Syndrome ("POTS").[4]  Id. ¶¶ 7-8.  Collier

6  sought treatment through her medical insurance and on her own, but

7  her medical problems persisted.  Id.  Collier claims that while

8  rest improves her pain, there is no treatment for her fatigue.  Id.

9  ¶ 8.  Collier claims that the pain and fatigue significantly

10 affected her ability to perform her regular duties with Marin

11 County.  Id. ¶ 5.

12     In February 2007, Collier submitted a claim to ReliaStar for

13 disability benefits that was subsequently approved, effective

14 September 12, 2006.  RS000850, RS000181.  ReliaStar began to re-

---

[3] According to National Institute of Health ("NIH"):

> Ehlers-Danlos syndrome (EDS) is a group of inherited
> disorders that weaken connective tissues. Connective
> tissues are proteins that support skin, bones, blood
> vessels and other organs.

ECF No. 33 ("Bromen Aff.") Ex. B.

[4] According to the NIH:

> Postural orthostatic tachycardia syndrome (POTS) is one
> of a group of disorders that have orthostatic intolerance
> (OI) as their primary symptom. OI describes a condition
> in which an excessively reduced volume of blood returns
> to the heart after an individual stands up from a lying
> down position. The primary symptom of OI is
> lightheadedness or fainting. In POTS, the lightheadedness
> or fainting is also accompanied by a rapid increase in
> heartbeat of more than 30 beats per minute, or a heart
> rate that exceeds 120 beats per minute, within 10 minutes
> of rising. The faintness or lightheadedness of POTS are
> relieved by lying down again.

Bromen Aff. Ex. A.

1  evaluate Collier's claim in 2008, when the standard for receiving

2  benefits under the policy changed from "own occupation" to "any

3  occupation."  See AR RS000179.  On April 8, 2009, ReliaStar

4  informed Collier that she did not meet the policy's definition of

5  being "totally disabled" as of September 13, 2008, under the "any

6  occupation" standard, and that her benefits were being terminated.

7  RS0000146.  Collier filed an administrative appeal on April 17,

8  2009, but ReliaStar upheld the denial decision on February 5, 2010.

9  RS000134, RS000471.

10      On June 15, 2010, a hearing concerning Collier's application

11  for disability retirement benefits from Marin County was held

12  before an Administrative Law Judge ("ALJ") at the State of

13  California's Office of Administrative Hearings on behalf of MCERA.

14  Bromen Aff. Ex. F ("ALJ Decision").  By the hearing date, Collier

15  had been without benefits for almost a year.  MCERA bylaws allowed

16  Collier to be represented by counsel at the hearing, Bromen Aff.

17  Ex. G § 1007, but Collier claims she "could not afford to pay for

18  representation on an hourly basis, and for financial and other

19  reasons, [she] was refused representation by a number of

20  attorneys," Collier Decl. ¶ 18.[5]  Collier represented herself at

21  the hearing, but claims that she was unable to follow all of the

22  proceedings due to pain and fatigue.  Id. ¶¶ 18, 20.  Dr. James

23  Soong ("Dr. Soong"), the County's expert and the only physician at

24  the hearing, testified that Collier was able to perform the duties

25

26  [5] At the time, Collier was represented by David Linden ("Linden")
    in connection with ReliaStar's denial of benefits, but Linden
27  claimed that the administrative hearing was outside of his field.
    Collier Decl. ¶ 18.  Linden unsuccessfully attempted to continue
28  the hearing so that Collier could find representation.  Id.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  of her previous position with Marin County.  Bromen Aff. Ex. H at

2  83-143.

3      The ALJ was tasked with determining whether Collier was

4  "permanently incapacitated" from performing the duties of an

5  Eligibility Worker II.[6]  Cal. Gov't Code § 31724.  He concluded

6  that she was not.  ALJ Decision at 6.  The ALJ's findings were

7  clearly influenced by the fact that the County's expert, Dr. Soong,

8  was the only physician to testify at the hearing.  Specifically,

9  the ALJ concluded:

10      [Collier]'s medical records are voluminous.  She relies
        on various documents from [her treating physicians] to
11      assert that she has [EDS] and POTS and that she is
        incapacitated from her job duties.  While [Collier's]
12      medical records are extensive, and although [she] saw
        many physicians, . . . [t]here was no opportunity to
13      examine or cross-examine her physicians.  Notably, her
        physicians did not appear to be familiar with the duties
14      of an Eligibility Worker II.  Id. at 5.

15      Dr. Soong [the County's expert] was the only physician to
        testify at hearing [sic].  He was subject to direct and
16      cross-examination.  He was unequivocal in his conclusion
        that [Collier] did not have [EDS] and that she was not
17      incapacitated from performance of the duties of the
        Eligibility Worker II position.
18

19  Id. at 5-6.  On January 12, 2011, MCERA's Board of Retirement

20  unanimously approved the ALJ's findings and denied Collier's

21  request for disability retirement benefits.  Bromen Aff. Ex. J.

22  Collier did not seek judicial review of the decision in California

23  state court.

24      Collier filed the instant action against ReliaStar on April

25  11, 2011, asserting claims for breach of contract, bad faith, and

26  ――――――――――――――――
    [6] Under section 31724 of the California Government Code, "[i]f the
27  proof received, including any medical examination, shows to the
    satisfaction of the board that the member is permanently
    incapacitated physically or mentally for the performance of his
28  duties in the service, it shall retire him . . . ."

**United States District Court**
For the Northern District of California

1  IIED.  ReliaStar moved for summary judgment on February 3, 2012,

2  and the motion was granted in part and denied in part on March 13,

3  2012.  The Court rejected ReliaStar's argument that Collier was

4  collaterally estopped from bringing the instant action due to the

5  outcome of the MCERA hearing.  SJ Order at 2.  The Court reasoned

6  that Collier did not have an adequate opportunity to litigate her

7  claims before MCERA because she represented herself pro se and

8  because she claimed she was distracted by fatigue and pain

9  throughout the proceedings.  Id. at 11.  The court dismissed

10 Collier's bad faith claim, finding that the undisputed evidence

11 showed that ReliaStar met its duty to investigate Collier's claim.

12 Id. at 14.  The Court reasoned that ReliaStar consulted a number of

13 physicians, reviewed the records of Collier's own physicians, and

14 repeatedly asked Collier to submit additional documents that might

15 support her claim.  Id. at 14-15.  The Court also dismissed

16 Collier's claims for IIED, reasoning that the standard for IIED "is

17 at least as difficult to meet as that for insurance bad faith, if

18 not more so."  Id. at 20-21 (quoting Ayers v. Std. Ins. Co., 51

19 Fed. Appx. 222, 224 (9th Cir. 2002)).

20     On April 9, 2012, the case proceeded to trial.  This time,

21 Collier was represented by counsel.  The jury heard testimony from

22 not only Dr. Soong but also Collier's treating physicians, Dr.

23 Karen Friday ("Dr. Friday"), Dr. Kamer Tezcan ("Dr. Tezcan"), Dr.

24 Kathreen Johnston ("Dr. Johnston"), Dr. Edward Pinner ("Dr.

25 Pinner"), and Dr. Michael Mason ("Dr. Mason").  ECF Nos. 101-104.

26 ReliaStar's expert, Dr. Asim Khan ("Dr. Khan"), also testified.

27 ECF No. 104.  Before the close of evidence, ReliaStar moved for

28 judgment as a matter of law on the basis of collateral estoppel for

**United States District Court**
For the Northern District of California

1  the reasons stated in its summary judgment motion as supplemented

2  by the testimony at trial.  ECF No. 106 at 4.  The motion was

3  denied.  Id.  On the afternoon of April 12, 2012, the case was

4  given to the jury, which was asked to determine whether Collier was

5  "totally disabled" as of April 9, 2009.[7]  ECF No. 107 ("Jury

6  Instructions") at 3.  The jury returned a verdict in favor of

7  Collier later that day.

8

9  **III.  DISCUSSION**

10       **A.   ReliaStar's Motion for Judgment as a Matter of Law**

11       ReliaStar now renews its motion for judgment as a matter of

12  law pursuant to Federal Rule of Civil Procedure 50.  Rule 50

13  requires a court to render a judgment as a matter of law where "a

14  party has been fully heard on an issue during a jury trial and the

15  court finds that a reasonable jury would not have a legally

16  sufficient evidentiary basis to find for the party on that issue .

17  . . ."  Fed. R. Civ. P. 50(a)(1).  "The standard for judgment as a

18  matter of law under Rule 50 mirrors the standard for summary

19  judgment under Rule 56."  Reeves v. Sanderson Plumbing Prods.,

20  Inc., 530 U.S. 133, 135 (2000).  "Thus, the court must review all

21  of the evidence in the record, drawing all reasonable inferences in

22  favor of the nonmoving party, but making no credibility

23

24  [7] The jury was further instructed that, under the terms of
    Collier's ReliaStar insurance policy, Collier was totally disabled
25  "if she had a disability that rendered her unable to perform with
    reasonable continuity the substantial and material acts necessary
26  to pursue her usual occupation in the usual or customary way or to
    engage with reasonable continuity in another occupation in which
27  she could reasonably be expected to perform satisfactorily in light
    of her age, education, training, experience, station in life, and
28  physical and mental capacity."  Jury Instructions at 3.

**United States District Court**
For the Northern District of California

1    determinations or weighing any evidence."  Id. (internal citations

2    omitted).

3        ReliaStar argues that it is entitled to judgment as a matter

4    of law because Collier was collaterally estopped from bringing the

5    instant action due to MCERA's prior determination on Collier's

6    claim for disability retirement benefits.  Def.'s Mot. at 6.

7    Collateral estoppel, also known as issue preclusion, applies where:

8    (1) the issue to be precluded is identical to that decided in a

9    prior proceeding; (2) the issue was actually litigated in the prior

10   proceeding; (3) the issue was necessarily decided; (4) the decision

11   in the prior proceeding was "final and on the merits"; and (5) the

12   party against whom preclusion is sought is identical to or in

13   privity with the party to the former proceeding.  People v. Garcia,

14   39 Cal. 4th 1070, 1077 (Cal. 2006).  "Collateral estoppel may be

15   applied to decisions made by administrative agencies when an

16   administrative agency is acting in a judicial capacity and resolves

17   disputed issues of fact properly before it which the parties have

18   had an adequate opportunity to litigate."  People v. Sims, 32 Cal.

19   3d 468, 479 (Cal. 1982) (internal quotations omitted).

20       In its Summary Judgment Order, the Court found that collateral

21   estoppel did not bar Collier's claims because she did not have an

22   adequate opportunity to litigate her claims before MCERA.  SJ Order

23   at 11.  In making this determination, the Court relied on the facts

24   set forth in Collier's declaration.  Id. at 11-12.  Collier

25   declared that she was forced to represent herself pro se because,

26   "for financial and other reasons, [she] was refused representation

27   by a number of attorneys."  Collier Decl. ¶ 18.  Collier also

28   declared that she was unable to follow the administrative

**United States District Court**
For the Northern District of California

1  proceedings due to pain and fatigue, that one of her physicians

2  declined to testify at the hearing, and that she did not know the

3  procedure to arrange for his testimony.  Id. ¶¶ 18-20.  ReliaStar

4  disputed some of these facts, but, because this issue came on a

5  motion for a summary judgment, the Court viewed the facts in the

6  light most favorable to Collier, the non-moving party.  See SJ

7  Order at 13 n.5.

8      ReliaStar now argues that Collier had a full and fair

9  opportunity to litigate before MCERA because: (1) Collier could

10 have sought judicial review of the ALJ's decision with the help of

11 counsel, (2) case law shows that pro se status alone does not

12 shield a party from collateral estoppel, (3) Collier was competent

13 to represent herself at the MCERA hearing despite her alleged pain

14 and fatigue, (4) Collier received some assistance from counsel in

15 preparing for the MCERA hearing, and (5) Dr. Mason, Collier's

16 primary care physician, testified at trial that he would have

17 testified before MCERA had Collier asked.  Def.'s Mot. at 8-11.

18     The Court is not persuaded.  As an initial matter, ReliaStar's

19 first four arguments should have been raised in its summary

20 judgment briefing.  These new arguments do not depend on any new

21 evidence raised at trial.  Rather, they merely offer new legal

22 theories and new authority which were not raised before.  Compare

23 Def.'s Mot. 8-11 with ECF No. 41 ("Def.'s MSJ Reply") at 5-6, ECF

24 No. 51 ("Def.'s Response to MSJ Surreply").  ReliaStar previously

25 had a full and fair opportunity to present its arguments on this

26 issue.  The Court declines to give it a second bite at the apple

27 post-judgment.[8]   Only ReliaStar's fifth argument -- that Dr. Mason

28

---

[8] Further, these four arguments would not alter the Court's
analysis.  As to ReliaStar's first argument, an appeal of MCERA's

**United States District Court**
For the Northern District of California

1  indicated that he would have testified at the MCERA hearing had he

2  been asked -- is predicated on new information that came to light

3  at trial.  This argument is unavailing.  The fact that Dr. Mason, a

4  physician at Kaiser Permanente ("Kaiser"), was willing to testify

5  does not mean that Collier could have secured his appearance at the

6  hearing.  Collier would have had to negotiate with a separate

7  medical-legal unit at Kaiser to arrange for Dr. Mason's appearance.

8  ECF No. 129 ("Phillips Decl.") ¶ 3; ECF No. 130 ("Padway Decl.") ¶

9  8.  This unit frequently requires the personal service of subpoenas

10  and the pre-payment of physician fees.  Phillips Decl. ¶ 3.  It is

11  unclear that Collier could have negotiated the Kaiser system on her

12  own.  Further, ReliaStar's focus on Dr. Mason distorts the scope of

13  this case.  At trial, Collier's counsel presented the testimony of

14  five physicians -- four from Kaiser and one from Stanford

15  University.  ECF Nos. 101-104.

16

17

---

18  decision through a writ of mandate to a California state court
   would likely have been futile.  The state court would not have
19  reviewed Collier's case de novo.  <u>See</u> Cal. Civ. Proc. Code §
   1094.5.  Accordingly, Collier would not have had an opportunity to
20  introduce testimony from her treating physicians on appeal.  With
   respect to ReliaStar's second argument, the MCERA proceedings were
21  not unfair merely because Collier represented herself pro se.  As
   explained in the Court's Summary Judgment Order, Collier was
22  incapable of adequately representing herself because of her chronic
   pain and fatigue.  <u>See</u> SJ Order at 11.  In its third argument,
23  ReliaStar contends that Collier could not have been suffering from
   disabling pain and fatigue through the MCERA hearing because MCERA
24  found her disability claim was meritless.  Def.'s Mot. at 12.  This
   argument is circular.  If Collier's condition rendered her unable
25  to present a competent case at the hearing, then the MCERA's
   determination as to Collier's condition is far from reliable.
26  ReliaStar's fourth argument is predicated on the fact that Linden
   assisted Collier in attempting to obtain a continuance of the
27  administrative hearing and entered an appearance after the hearing
   was concluded.  <u>Id.</u> at 8.  However, ReliaStar does not dispute that
28  Collier was unrepresented during the substantive portion of the
   hearing.

United States District Court
For the Northern District of California

1    Even if Collier did have a full and fair opportunity to

2  litigate her case before MCERA, she is not collaterally estopped

3  from bringing the instant action because the MCERA hearing involved

4  different issues.  First, Collier's burden of proof was different

5  at the MCERA hearing.  At trial, Collier needed to prove her claim

6  by the preponderance of the evidence.  Jury Instructions at 6.  In

7  contrast, at the MCERA hearing, Collier needed to submit proof to

8  "the satisfaction of the [MCERA] board."  Cal. Gov't Code § 31724.

9  Thus, the board had the discretion to reject Collier's claim, even

10 if she proved her case by the preponderance of the evidence.

11    Further, at the MCERA hearing, Collier needed to show that she

12 was "permanently incapacitated."  Cal. Gov't Code § 31724.  At

13 trial, the jury was not concerned with the duration of Collier's

14 disability.  They only needed to decide whether she was "totally

15 disabled" under the terms of the ReliaStar policy on April 9, 2009.

16 ReliaStar argues that MCERA's decision did not turn on a finding of

17 permanence.  Def.'s Reply at 7.  Specifically, Reliastar argues

18 that MCERA "concluded that Collier was in fact able to perform the

19 duties of her county position . . . ."  Id.  The Court disagrees.

20 The ALJ at the MCERA hearing merely found that Collier did not meet

21 her burden.  He gave little weight to the documents authored by

22 Collier's physicians since there was no opportunity to examine or

23 cross-examine those physicians and because they "did not appear to

24 be familiar with the duties of an Eligibility Worker II."  ALJ

25 Decision at 5.  On the other hand, the ALJ found the testimony of

26 Dr. Soong, Marin County's expert, to be "credible and persuasive."

27 Id.  Based on this evidence, the ALJ reached the legal conclusion

28 that: "[Collier] did not establish that she is substantially unable

United States District Court
For the Northern District of California

1  to perform the usual duties of the Eligibility Worker II position."

2  ALJ Decision at 6.  The MCERA Board merely adopted the ALJ's

3  Decision and made no factual findings of its own.  See Bromen Aff.

4  Ex. J.

5      For these reasons, the Court finds that Collier is not

6  collaterally estopped from bringing the instant action and

7  therefore DENIES ReliaStar's renewed motion for judgment as a

8  matter of law.

9      **B.   Collier's Motion to Amend the Judgment**

10     Pursuant to Federal Rule of Civil Procedure 59, Collier moves

11 for an order vacating the portion of the Court's Summary Judgment

12 Order which dismissed her claims for bad faith and IIED.  Rule

13 59(e), which permits a court to alter or amend a previous order,

14 "offers an extraordinary remedy, to be used sparingly in the

15 interests of finality and conservation of judicial resources."

16 Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir.

17 2000) (internal quotations omitted).  "[A] motion for

18 reconsideration should not be granted, absent highly unusual

19 circumstances, unless the district court is presented with newly

20 discovered evidence, committed clear error, or if there is an

21 intervening change in the controlling law."  389 Orange St.

22 Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).  Evidence is

23 not newly discovered within the meaning of Rule 59 if it was in the

24 moving party's possession at the time of the prior hearing date or

25 could have been discovered with reasonable diligence.  Engelhard

26 Indus., Inc. v. Research Instrumental Corp., 324 F.2d 347, 352 (9th

27 Cir. 1963).

28

United States District Court
For the Northern District of California

1    In opposition to ReliaStar's prior motion for summary

2  judgment, Collier asserted at least fifteen arguments as to why her

3  bad faith claim should not be dismissed.  See ECF No. 37 ("Pl.'s

4  MSJ Opp'n") at 8-16.  The Court addressed and rejected each of

5  these arguments.  See SJ Order at 15-20.  Collier's motion to alter

6  the judgment raises many of these same arguments, as well as

7  arguments that could have been made before.  Collier does not

8  suggest that there has been an intervening change in controlling

9  law.  Further, the newly discovered evidence cited in Collier's

10  motion does not indicate that the Court reached the wrong

11  conclusion in dismissing Collier's bad faith and IIED claims in its

12  Summary Judgment Order.  As such, the extraordinary remedy of

13  amending the judgment is inappropriate here.

14    Collier first argues that ReliaStar ignored its continuing

15  duty to evaluate her claim, a duty which Collier claims extended

16  beyond ReliaStar's decision to terminate her benefits through the

17  trial on her breach of contract claim.  Id. at 4.  Collier suggests

18  that ReliaStar breached this duty because, at trial, no one ever

19  testified that ReliaStar ever looked at any "new information" to

20  decide whether to reevaluate ReliaStar's position on the case.  Id.

21  at 4-5.  This argument lacks merit.  Even if Collier's

22  interpretation of an insurer's continuing duty to investigate is

23  correct, ReliaStar was not required to present any evidence

24  concerning its evaluation of Collier's claim at trial.  By that

25  time, Collier's bad faith claim had already been dismissed.

26  ReliaStar cannot be faulted for failing to present evidence on an

27  issue which was irrelevant to its case.

28

14

**United States District Court**
For the Northern District of California

1      Next, Collier challenges the manner in which ReliaStar decided

2   to terminate her claim in April 2009.  Pl.'s Mot. at 5-10.  Missing

3   from this discussion is any reference to new evidence that could

4   not have been discovered through reasonable diligence prior to

5   summary judgment.  Collier's arguments are predicated on notes from

6   the claims administrator who approved Collier's claim in 2007,

7   ReliaStar's April 2009 letter to Collier informing her that her

8   benefits were being terminated, and ReliaStar's purported failure

9   to produce Karla Wagner ("Wagner"), the author of that termination

10  letter.  This is not new evidence.  Further, the Court previously

11  addressed Collier's arguments regarding Wagner when it ruled on her

12  motions in limine.  See ECF Nos. 83, 99.

13      Collier also takes issue with ReliaStar's decision to

14  dismiss the medical opinions of Dr. Higiuio Ortega, one of

15  Collier's treating physicians.  Pl.'s Mot. at 11-13.  Once again,

16  this argument does not rest on any new evidence.  These facts and

17  arguments were addressed in the Court's prior Summary Judgment

18  Order, see SJ Order at 4-6, 16-17, 19-20, and the Court will not

19  revisit them here.  Likewise, the Court declines to revisit the

20  issue of how ReliaStar weighed the statements of its experts, Drs.

21  Soong, Kahn, and Anderson, against the statements of Collier's

22  treating physicians, Drs. Mason, Pinner, and Johnson.  Compare

23  Pl.'s Mot. at 13-17 with Pl.'s MSJ Opp'n at 10-13; see SJ Order at

24  14-15, 17-18.

25      Accordingly, the Court DENIES Collier's motion to amend the

26  judgment.

27  ///

28  ///

**United States District Court**
For the Northern District of California

1   **IV.   CONCLUSION**

2          For the reasons set forth above, the Court DENIES Defendant

3   ReliaStar Life Insurance Company's renewed motion for judgment as a

4   matter of law and Plaintiff Wendy Collier's motion to amend the

5   judgment.   The Court's Summary Judgment Order and the jury's

6   Verdict shall remain undisturbed.

7

8          IT IS SO ORDERED.

9

10         Dated:   July 24, 2012

11                                             UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28